IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

JAMES L. SHINKLE,

       Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

No. C15-4023

REPORT AND RECOMMENDATION

---

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    *Shinkle's Education and Employment Background* . . . . . . . . . . . 5
    B.    *Testimony from Administrative Hearing held on June 23, 2011* . . . . 6
          1.   *Shinkle's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 6
          2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 6
    C.    *Testimony from Supplemental Hearing held on June 10, 2013* . . . . . 7
          1.   *Shinkle's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 7
          2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 7
    D.    *Shinkle's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . 8

V.   **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 13
    B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 16
          1.   *Remand to Recreate the Record* . . . . . . . . . . . . . . . . . 16
          2.   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . 17
          3.   *Medical Source Opinions* . . . . . . . . . . . . . . . . . . . . . 21

      *a.*    *Consultative Examining Sources* . . . . . . . . . . . . . . . 21
           *(1)*    *Dr. Marandola's Opinions* . . . . . . . . . . . . . . 22
           *(2)*    *Dr. Baker's Opinions* . . . . . . . . . . . . . . . . . 23
      *b.*    *Treating Non-Acceptable Medical Source* . . . . . . . . 24
    *4.*    *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**VI.**  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**VII.**  **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff James L. Shinkle on March 18, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Shinkle asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Shinkle requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On March 27, 2009, Shinkle protectively filed an application for disability insurance benefits.[1] On March 31, 2009, Shinkle protectively filed an application for SSI benefits.[2] In his disability insurance benefits application, Shinkle alleged an inability to work since

---

[1] According to the paper application for disability benefits contained in the record, Shinkle filed his application on April 23, 2009. *See* Administrative Record at 310. However, according to both the "Disability Determination and Transmittal" and the ALJ's first decision, dated August 26, 2011, Shinkle applied for disability benefits on March 27, 2009. *See* Administrative Record at 110; 118.

[2] The record does not contain a paper copy of Shinkle's application for SSI benefits. Again, both the "Disability Determination and Transmittal" and the ALJ's first decision, dated August 26, 2011, provide that Shinkle applied for SSI benefits on March 31, 2009. *See* Administrative Record at 111; 118.

March 5, 2007 due to anxiety attacks, panic attacks, depression, back pain, and toe numbness.[3] Shinkle's applications were denied initially on September 17, 2009. On February 17, 2010, both applications were denied on reconsideration. On June 23, 2011, Shinkle appeared via video conference with a non-attorney representative before Administrative Law Judge ("ALJ") Jan E. Dutton for an administrative hearing. Shinkle and vocational expert Anita Howell testified at the hearing. In a decision dated August 26, 2011, the ALJ denied Shinkle's claims. Shinkle appealed the ALJ's decision. On November 15, 2012, the Appeals Council remanded Shinkle's case to the ALJ for further consideration and evaluation of Shinkle's claims.

On June 10, 2013, Shinkle appeared via video conference with his attorney before ALJ Dutton for a supplemental hearing.[4] Shinkle and vocational expert Theresa Wolford testified at the hearing. In a decision dated September 9, 2013, the ALJ, again, denied Shinkle's claims. The ALJ determined that Shinkle was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Shinkle appealed the ALJ's second decision. On February 5, 2015, the Appeals Council denied Shinkle's request for review. Consequently, the ALJ's September 9, 2013 decision was adopted as the Commissioner's final decision.

---

[3] In the ALJ's second decision, dated September 9, 2013, the ALJ states Shinkle amended his disability onset date to October 1, 2008. *See* Administrative Record at 12; *see also* Shinkle's Brief (docket number 13) at 2 (providing October 1, 2008 as Shinkle's disability onset date). Interestingly, the ALJ's decision provides that Shinkle amended his disability onset date to October 1, 2008, from March 5, 2008; however, Shinkle's application for disability insurance benefits clearly states an onset date of March 5, 2007. *See* Administrative Record at 310.

[4] At the supplemental hearing, Shinkle was represented by attorney Brianne Dotts. On the instant appeal, he is represented by attorney Jay E. Denne.

On March 18, 2015, Shinkle filed this action for judicial review. The Commissioner filed an Answer on May 22, 2015. On July 13, 2015, Shinkle filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On September 10, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 21, 2015, Shinkle filed a reply brief. On September 22, 2015, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the

ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Shinkle's Education and Employment Background

Shinkle was born in 1974. He completed the twelfth grade. In the past, Shinkle worked as a store laborer, telemarketer, bus driver, information clerk, home attendant, and apartment manager.

## B. Testimony from Administrative Hearing held on June 23, 2011

### 1. Shinkle's Testimony

At the administrative hearing, Shinkle was asked why he believed he was unable to work. Shinkle testified that he was disabled and could not work because of psychological issues, primarily anxiety. He stated that he gets "stressed out" when attempting to perform any type of work. He also stated that he goes through "bouts of depression," and becomes self-abusive, hitting his head or punching himself. Shinkle concluded "I don't think I am capable of working. I just can't, I -- because of the extreme stress and frustrations[.] . . ."[5] Shinkle also indicated that he has difficulty with social interaction. According to Shinkle, he often withdraws from people and stops communicating with them. For example, Shinkle testified that he does no shopping because he "cannot stand" crowds of people. He stated a friend does all his shopping for him. Shinkle indicated that he rarely leaves his house.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Anita Howell with a hypothetical for an individual who is:

> capable of . . . routine, repetitive work that does not require extended concentration or attention and social interaction is limited to brief, superficial, occasional. And by that I would exclude constant, intense or frequent social interaction with the general public, coworkers or supervisors.

(Administrative Record at 56.) The vocational expert testified that under such limitations, Shinkle could not perform his past relevant work, but could perform the following jobs: (1) industrial janitor, (2) laundry worker, and (3) machine packager.

---

[5] Administrative Record at 50.

### C. Testimony from Supplemental Hearing held on June 10, 2013

#### 1. Shinkle's Testimony

At the supplemental hearing, the ALJ inquired why Shinkle applied for disability benefits. Shinkle replied "[w]ell, because of my physical condition and my mental condition, it just got to the point where I couldn't really work. I mean, I get stressed out easy. I have anxiety. I do have paranoid thoughts."[6] Shinkle further explained that he is unable to work because:

> Well, I can't handle the stress, the pressure. I don't interact with people very well. I have a hard time making those types of connections. You know, I have paranoid thoughts. My anxiety, you know, gets to the point where I'll have a panic attack on the job and I can't continue to work because of it. It just disables me at that point.

(Administrative Record at 79.) Additionally, Shinkle stated that his anxiety and paranoia cause him to avoid both small (5-7 people) and large crowds of people.

Shinkle also testified regarding his physical limitations. He stated he experiences pain in his low back, legs, and feet. Shinkle rated his low back pain at 4 or 5 on a scale of 1 to 10, with 10 being the most extreme pain. Shinkle stated that his pain is aggravated by walking and sitting. He estimated he could walk "a couple" of blocks before needing to rest due to pain. He also stated that lying down relieved some of his pain.

#### 2. Vocational Expert's Testimony

At the supplemental hearing, the ALJ provided vocational expert Theresa Wolford with a hypothetical for an individual who is able to:

> occasionally lift or carry 50 pounds, frequently lift 25 pounds, no restriction in stand, sit or walk, could do all those activities at least six hours in an eight-hour day; no difficulty using hands and needed unskilled work . . . routine, repetitive work; doesn't require extended concentration or attention and social

---

[6] Administrative Record at 77.

> interaction can be brief, superficial up to occasional but
> exclude constant or intense with the public, coworkers and the
> supervisors.

(Administrative Record at 101.) The vocational expert testified that under such limitations, Shinkle could perform his past work as a store laborer, and could also perform the following medium unskilled jobs: (1) industrial cleaner, and (2) hand packager. The ALJ provided the vocational expert with a second hypothetical for an individual who could:

> only lift or carry 20 pounds occasionally, 10 pounds
> frequently; can stand, sit or walk six hours in an eight-hour
> day, no other physical restrictions; let's say occasional
> postural. . . . and the mental carried over from the first one,
> first hypothetical.

(Administrative Record at 102.) The vocational expert testified Shinkle could perform the following light unskilled jobs: (1) housekeeping, (2) routing clerk, and (3) folding machine operator. Next, the ALJ asked about jobs available to Shinkle if he was limited to light sedentary work. The vocational expert testified that under such circumstances, Shinkle could perform the following jobs: (1) final assembler, (2) table worker, and (3) grinding machine operator.

### D. Shinkle's Medical History

On August 19, 2009, Shinkle was referred by Disability Determination Services ("DDS") to Dr. Denise Marandola, Ph.D., for a psychological assessment. Shinkle reported that his primary complaints were chronic back pain, anxiety with panic attacks, high blood pressure, and possible sleep apnea. Shinkle described his panic attacks to Dr. Marandola as follows:

> during his panic attacks, he feels overwhelming dread, racing
> thoughts, can't concentrate, can't sit still, feels agitated and
> has clammy hands. He stated that he hasn't had a panic attack
> in a couple months but he was getting them every other week.
> He stated that he doesn't feel that his heart is racing or have
> shortness of breath with the panic attacks.

(Administrative Record at 600-01.)  Shinkle also discussed his drug and alcohol use:

> [Shinkle] stated that he drinks alcohol on occasion.  He used
> methamphetamines off and on over the past couple years, with
> his last use being 6-12 months ago, but he didn't use daily.
> He used marijuana for a brief period of time, but never daily,
> and he stated that he hasn't used in 2-3 years because it made
> him paranoid.  He quit smoking a couple years ago but he
> experienced an increase in this anxiety and panic attacks.

(Administrative Record at 601.)  In addressing his activities of daily living, Shinkle reported to Dr. Marandola:

> he is able to care for his own personal hygiene.  He is able to
> cook, he sometimes helps the cleaning lady clean and he does
> laundry, but he's not supposed to lift the laundry basket, so he
> just does small loads.  He is able to shop on his own.

(Administrative Record at 602.)  On the mental status examination, Dr. Marandola noted "mild" cognitive impairment.  Upon testing, Dr. Marandola found that Shinkle's registration, naming, repetition, comprehension, reading, writing and drawing tasks were all performed without error.  Dr. Marandola also found Shinkle "demonstrated poor attention and concentration during serial 7's as he would lose track of where he left off and he had a to repeat himself to remember."[7]  Additionally, Shinkle had difficulties with recall, as he could only remember two out of three words after a brief interval.  Testing also revealed severe depression and moderate anxiety.  Dr. Marandola diagnosed Shinkle with panic disorder without agoraphobia, major depressive disorder, insomnia, amphetamine abuse in partial remission, chronic back pain, high blood pressure, and possible sleep apnea.  Dr. Marandola rated Shinkle's GAF score at 50.  Dr. Marandola concluded:  (1) Shinkle would have no difficulty understanding instructions, procedures, and locations, but his memory may be negatively effected by periods of anxiety and

---

[7] Administrative Record at 602.

depressed mood; (2) Shinkle would be able to carry out instructions; (3) Shinkle's attention and concentration would be variable depending upon mood and/or anxiety; (4) Shinkle has a history of difficulty interacting with supervisors, co-workers, and the public; (5) Shinkle has a history of good judgment; and (6) due to anxiety and depressed mood, Shinkle would have difficulty responding to changes in the work place and would function best with routine and minimal stress.

On September 11, 2009, Dr. Aaron Quinn, Ph.D., reviewed Shinkle's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Shinkle. On the Psychiatric Review Technique assessment, Dr. Quinn diagnosed Shinkle with major depressive disorder, panic disorder with agoraphobia, and amphetamine abuse in partial remission. Dr. Quinn determined Shinkle had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Quinn determined Shinkle was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Quinn concluded:

> [Shinkle] is expected to have intermittent work-related difficulties with extended attention, detailed instructions, stress management, interpersonal functioning, and change. [Shinkle] does, though, retain the ability to complete moderately complex tasks on a sustained basis.

(Administrative Record at 624.)

On June 24, 2010, Shinkle met with Karen Stoos, ARNP, for a psychological evaluation. Shinkle's chief complaint was feeling depressed and anxious. In reviewing Shinkle's drug and alcohol use, Shinkle reported:

> he used methamphetamine very heavy for two years and then for the past 1 year off and on. He states he hasn't used in the past 4 months but uses marijuana occasionally. He states he seldom drinks and when he does drink he only has one can of beer for [(*sic*)] one drink unless he goes out. He denies that he drinks to become intoxicated.

(Administrative Record at 700.) Upon examination, Stoos diagnosed Shinkle with mood disorder, amphetamine abuse, cannabis abuse, and possible alcohol abuse. Stoos rated Shinkle's GAF score at 49. Stoos believed that Shinkle's past drug use "likely" affected his mood and anxiety. Stoos agreed to see Shinkle again in the future for further treatment.

On December 4, 2012, Terry Hey, LISW, Shinkle's treating counselor, provided a letter to Shinkle's attorney discussing Shinkle's mental health. Hey indicated that she had been treating Shinkle since June 8, 2011. Hey opined "Mr. Shinkle is completely mentally disabled due to the fact that he has paranoid schizophrenia."[8] Symptoms of schizophrenia include anxiety and paranoia. Hey concluded Shinkle:

> is unable to cope with the expectations of others which include the stress of employment expectations. In my opinion [Shinkle] is not employable as he would not be able to handle the expectations of an employer, the demands of the close proximity of co-workers; [he] is fearful and distrustful of others.
>
> With regular psychiatric care he can lead a somewhat comfortable if limited life however -- working is out of the question for someone with this diagnosis.

---

[8] Administrative Record at 794.

(Administrative Record at 794.)

On August 13, 2013, Shinkle was referred by DDS to Dr. Michael P. Baker, Ph.D., for a psychodiagnostic mental status examination. Shinkle explained his reasons for applying for disability to Dr. Baker as follows:

> [Shinkle] is applying for disability he states because "they (SMHC) think I'm schizophrenic. I have panic attacks. I have some OCD and a bit of depression. . . ." He then added that he was told then that he had "borderline personality disorder." Presently, he sees Dr. Patel and therapist Terry Hey, LISW through SMHC. . . . [Shinkle] states [medications] "may help some, but I still get paranoid. I don't like when people look at me. Sometimes I feel like I'm being followed. I don't like the medicine because it makes me tired."

(Administrative Record at 995.) In reviewing Shinkle's activities of daily living, Dr. Baker noted:

> [Shinkle] reports that bed time has recently been around 10:00 pm and he has prolong onset to sleep, usually of at least two hours. He usually arises for the day between 7:00 and 8:00 am. He reports that they watch some TV during the day, he likes to read "particularly religious stuff," depends on his mood regarding other activities, which include going on walks. . . . Around the house, he does chores of taking out the trash and "helping to do the dishes." He does some minimal yard work. He does drive and has a license. He reports that he avoids driving as much as he can because it causes him to be "a little afraid." This usually is related to feeling like he is being followed and this occurs almost daily. . . . He engages in little other social activity.

(Administrative Record at 997.) Upon examination and testing, Dr. Baker diagnosed Shinkle with paranoid schizophrenia reported by history, mood disorder vs. major depressive disorder, and anxiety disorder. Dr. Baker rated Shinkle's GAF score at 45. Dr. Baker concluded:

> [Shinkle] has some immediate recall and memory difficulties
> though in non-complex situations he would seem able to
> understand and remember instruction, procedures and location
> for the most part. He has chronic problems with depression
> and anxiety that will interfere when problematic. This will be
> similar for his ability to maintain adequate attention,
> concentration, and pace. Therefore, sustained employment is
> not likely to be consistently adequate. In regards to interacting
> appropriately with supervisors, co-workers, and the public,
> [Shinkle] reports that this has been a primary area of stress.
> He interacted sufficiently well on a one-on-one basis during
> the interview. His social anxiety is likely to have interference
> in this area. Similarly, his ability to use good judgment and
> respond appropriately to changes in the workplace will be
> variable. For the most part, this is likely adequate, often
> knowing the appropriate action, but emotional reactivity
> considering the anxiety and depression might make this less
> than desirable. The significant history suggestive of past
> diagnostic confusion does indicate his lack of emotional
> stability for consistent employment functioning.

(Administrative Record at 998.) Additionally, in a "Medical Source Statement" dated August 14, 2013, Dr. Baker opined Shinkle would be moderately limited in his ability to: understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Shinkle is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671

F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Shinkle had not engaged in substantial gainful activity since October 1, 2008. At the second step, the ALJ concluded from the medical evidence that Shinkle has the following severe impairments: low back pain, obesity, mood disorder/major depressive disorder, and anxiety disorder. At the third step, the ALJ found that Shinkle did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Shinkle's RFC as follows:

> [Shinkle] has the residual functional capacity to perform light work . . . except as follows:
>
> [Shinkle] can only lift or carry 20 pounds occasionally and 10 pounds frequently. In an 8-hour day, he can stand 6 hours, sit 6 hours, or walk 6 hours. [He] can occasionally perform postural activities. He has no other physical restrictions.
>
> Mentally, [Shinkle] needs unskilled work (SVP 1 or 2) which is routine repetitive work and work that does not require extended concentration or attention. [Shinkle's] social interactions can be brief and superficial, up to occasional but avoid constant or intense interactions with the public, co-workers, and supervisors.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Shinkle was unable to perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Shinkle could work at

jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Shinkle was not disabled.

### B. Objections Raised By Claimant

Shinkle argues that the ALJ erred in four respects. First, Shinkle argues the Court should order a limited remand in this case with directions to "recreate" the record due to alleged "complete" illegible or "somewhat" illegible pages in the record. Second, Shinkle argues the ALJ failed to properly evaluate his subjective allegations of disability. Third, Shinkle argues the ALJ failed to properly evaluate the opinions of consultative examining sources, Dr. Marandola and Dr. Baker, and treating counselor Terry Hey. Lastly, Shinkle argues the ALJ's RFC assessment is flawed because it is not supported by substantial evidence.

#### 1.    Remand to Recreate the Record

In his brief, Shinkle asserts:

> significant portions of the record in this case are either illegible or difficult to read. The undersigned could not find a case where this has happened before, but there are cases where the decision of the ALJ has been reversed and remanded with directions to attempt to reconstruct a missing file. . . . Therefore, if the Court does not order the imposition of benefits, Shinkle requests that the Court remand with directions to reconstruct the file so that the medical records can be read.

Shinkle's Brief (docket number 13) at 15. Additionally, the final sentence in Shinkle's reply brief states "Plaintiff notes that Defendant does not argue against his claim that the case should be remanded because many of the medical records in the file are either illegible or legible only in part."[9]

---

[9] Shinkle's Reply Brief (docket number 15) at 3.

The Court suspects the Commissioner did not address this argument because it is wholly without merit. First, there are no "missing" files to reconstruct. Second, and more significantly, the Court reviewed the entire medical record and was able to read all the records in the file. The Court did not find any medical records that were illegible or even partially illegible. Moreover, Shinkle did not direct the Court to any specific record that he believed was both pertinent to his case, and also allegedly illegible or partially illegible. Accordingly, under such circumstances, the Court finds Shinkle's argument to be without merit, and remand for recreation of the record is unnecessary.

### 2.    *Credibility Determination*

Shinkle argues the ALJ failed to properly evaluate his subjective allegations of pain and disability. Shinkle maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Shinkle's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In his decision, the ALJ thoroughly reviewed and discussed Shinkle's testimony from the administrative hearings.[10] In determining Shinkle's credibility, the ALJ addressed Shinkle's subjective allegations as follows:

---

[10] *See* Administrative Record at 17-18, 22 (providing thorough discussion of Shinkle's subjective allegations and testimony from the administrative hearing).

[Shinkle] is not a fully credible witness and his subjective complaints are out of proportion to the objective evidence. In statements of record submitted to the Social Security Administration and/or testimony as provided by [Shinkle], [Shinkle] indicated that he could do the following: generally perform his day-to-day personal care activities; prepare his own meals; perform household chores (wash dishes, and do laundry); drive; and shop at stores for clothes and personal items; talk to friends; live with a friend; attend church; read as a hobby once or twice a day; watch television; pay bills; handle a savings account and use a checkbook/money orders; use a computer; and answer phones for his friend Edwin Luikart at his office and wait on customers a few hours a day. The activities that [Shinkle] is able to engage in are not consistent with that of a disabled person. Additionally, the treatment that [Shinkle] received for his severe impairments has generally been rather routine and conservative in nature. Moreover, as mentioned previously, there has been significant amounts of time when [Shinkle] was receiving little or no treatment.

Other factors eroding [Shinkle's] credibility include [Shinkle] testifying if he walks 10 feet, the pain in his feet is aggravted and that sitting also aggravates the pain affecting his feet. [Shinkle] said he has a ten pound back restriction but there is nothing to support this assertion. His diagnosis in 2008 was "low back strain" His neck MRI at 11F did not suggest a need for orthopedic referral (see 1F/7 and 7F/2). An MRI dated December 21, 2009 was normal. This MRI was done for the purpose of litigation after a car accident, and [Shinkle] said the insurance company disputed the claim.

Further, the record does not demonstrate that [Shinkle] made such complaints to his medical providers on a consistent or frequent basis. Likewise, the record does not indicate that [Shinkle] generally had complaints about his ability to lift. Additionally, as mentioned previously, the severity of [Shinkle's] alleged symptoms did not prompt him to seek emergency room care or result in any hospitalizations.

Moreover, an overview of the record reveals that the severity of [Shinkle's] alleged symptoms are inconsistent[11] with the evidence in record; further eroding his credibility.[11] Lastly, by his own admission, [Shinkle] said that he has not had a panic attack in a year; also calling his credibility into question.

In sum, based on the total record, [Shinkle's] symptoms and impairments are not as severe as alleged and the undersigned has not given great weight to [his] implicit allegation that he is unable to engage in any and all kinds of full-time, competitive, gainful employment on a sustained basis.

(Administrative Record at 22-23.)

In her decision, the ALJ thoroughly considered and discussed Shinkle's treatment history, the objective medical evidence, his functional restrictions, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Shinkle's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Shinkle's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the

---

[11] *See* Administrative Record at 18-21 (providing thorough discussion of Shinkle's medical history and treatment).

conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *Medical Source Opinions*

Shinkle argues that the ALJ failed to properly evaluate the opinions of Dr. Marandola and Dr. Baker, both consultative examining sources. Shinkle also argues that the ALJ failed to properly evaluate the opinions of his treating mental health counselor, Terry Hey, a licensed social worker. Shinkle concludes that "[t]aken together, the opinions of Marandola, Baker, [and] Hey . . . mandate a finding of disability."[12]

#### a. *Consultative Examining Sources*

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

---

[12] Shinkle's Brief (docket number 13) at 11.

## (1)  *Dr. Marandola's Opinions*

In her decision, the ALJ thoroughly reviewed Dr. Marandola's opinions.[13]  The ALJ provided the following reasons for granting only "some" weight to Dr. Marandola's opinions:

> First, although Dr. Marandola is an acceptable medical source, her opinions and reports were based on a one-time assessment of [Shinkle's] conditions.  Additionally, [Shinkle] was receiving no therapy or taking medications for his mental conditions at the time Dr. Marandola provided her assessment. (Exhibit 5F/2)  Moreover, the opinions and reports of Dr. Marandola are inconsistent with [Shinkle's] reported activities (discussed below).[14]  Thus, the opinions and reports of Dr. Marandola are only given some weight.

(Administrative Record at 19.)  Additionally, in her decision, the ALJ thoroughly discussed Shinkle's treatment for mental health problems, noting that "[f]ollowing his consultative psychological evaluation with Dr. Marandola on August 19, 2009, the record is essentially void of any treatment that [Shinkle] received for his severe mental conditions in 2009."[15]  The ALJ further addressed Shinkle's mental health treatment in her decision, and noted that from 2010 through 2012, his GAF scores ranged from 53 to 64, which was indicative of only moderate and mild symptoms.[16]

Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence and review of Shinkle's treatment history, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by

---

[13]  *See* Administrative Record at 19.

[14]  *Id.* at 22 (providing a thorough discussion of Shinkle's activities of daily living by the ALJ).

[15]  *Id.* at 19.

[16]  *Id.* at 19-21.

Dr. Marandola. Specifically, the ALJ granted Dr. Marandola's opinions "some" weight, and addressed inconsistencies within Dr. Marandola's opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly granted "some" weight to Dr. Marandola's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### (2) Dr. Baker's Opinions

Similar to Dr. Marandola's opinions, the ALJ in her decision, thoroughly reviewed Dr. Baker's opinions.[17] The ALJ provided the following reasons for Dr. Baker's opinions being "not given great weight":

> First, although Dr. Baker is an acceptable medical source, his opinions and reports were based on a one-time assessment of [Shinkle's] conditions. In addition, his opinions and reports are not consistent with the substantial evidence in record from the treating source PA Reddy, including [Shinkle's] GAF score of 60 indicative of moderate symptoms provided by a treating provider as late as June 2013. (Exhibit 23F/5) Moreover, the opinions and reports of Dr. Baker are inconsistent with [Shinkle's] reported activities (discussed below).[18] Thus, the opinions and reports of Dr. Baker to the extent [Shinkle] is given a GAF of 45 and classified as schizophrenic are not given great weight.

(Administrative Record at 21.)

Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence and review of Shinkle's treatment history, the Court finds that

---

[17] *See* Administrative Record at 21.

[18] *Id.* at 22 (providing a thorough discussion of Shinkle's activities of daily living by the ALJ).

the ALJ properly considered and weighed the opinion evidence provided by Dr. Baker. Specifically, the ALJ did not give great weight to Dr. Baker's opinions, and addressed inconsistencies within Dr. Baker's opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly weighed Dr. Baker's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. *Treating Non-Acceptable Medical Source*

As a licensed social worker, Terry Hey, LISW, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Hey is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a licensed social worker, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In her decision, the ALJ addressed Hey's opinions as follows:

> In December 2012, Terry Hey, social worker, opined that [Shinkle] was completely mentally disabled due to the fact that he has paranoid schizophrenia. She was also of the opinion that such condition rendered [Shinkle] unemployable as he would not be able to handle expectations of an employer, the demands of a job, or the close proximity of co-workers. (Exhibit 22F/2) First, although Ms. Hey LCSW is a treating source she is not an acceptable medical source and as a social worker not trained to make the diagnosis of schizophrenia. In addition, Ms. Hey's opinion is without support from other substantial evidence in the record and is inconsistent with [Shinkle's] activities (discussed below).[19] Moreover there is no indication in the record that [Shinkle] has a diagnosis of paranoid schizophrenia made by an acceptable medical source. [Shinkle] told Dr. Baker that he has "schizophrenia by history." Based on the foregoing reasons, Ms. Hey's opinion is given very little weight.

(Administrative Record at 21.) Additionally, in her decision, the ALJ thoroughly discussed Shinkle's treatment for mental health problems, noting that "[f]ollowing his consultative psychological evaluation with Dr. Marandola on August 19, 2009, the record is essentially void of any treatment that [Shinkle] received for his severe mental conditions in 2009."[20] The ALJ further addressed Shinkle's mental health treatment in her decision, and noted that from 2010 through 2012, his GAF scores ranged from 53 to 64, which was indicative of moderate and mild symptoms.[21] The ALJ further points out that Shinkle's

---

[19] *See* Administrative Record at 22 (providing a thorough discussion of Shinkle's activities of daily living by the ALJ).

[20] *Id.* at 19.

[21] *See* Administrative Record at 19-21.

treatment during this time period was conservative, and he reported improvement with feeling less paranoid and depressed.[22]

Having reviewed the entire record, the Court finds that the ALJ properly considered Hey's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated her reasons for finding Hey's opinions to be entitled to "little weight," and for finding her opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *see also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the consistency of such as source's opinions with the record as a whole). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 4. *RFC Assessment*

Shinkle argues that the ALJ's RFC assessment is flawed. Specifically, Shinkle argues that the ALJ's RFC assessment is incomplete because it does not properly account for all of his impairments and functional limitations. Shinkle also argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. Shinkle maintains that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

---

[22] *Id.*

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Shinkle's RFC, the ALJ thoroughly addressed and considered Shinkle's medical history and treatment for his physical and mental complaints.[23] The ALJ also properly considered and thoroughly discussed Shinkle's subjective allegations of disability in making her overall disability determination, including determining Shinkle's RFC.[24] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Shinkle's medical records, observations of treating and non-treating physicians, and Shinkle's own description of his limitations in making the ALJ's RFC assessment for Shinkle.[25] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Shinkle's assertion that the ALJ's RFC assessment is flawed is without merit.

## VI. CONCLUSION

I find remand to "recreate" the record is unnecessary. I further find the ALJ properly determined Shinkle's credibility with regard to his subjective complaints of pain and disability, properly considered and weighed the opinions of Dr. Marandola, Dr. Baker, and Terry Hey, and properly determined Shinkle's RFC based on a fully and fairly developed record. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

---

[23] *See* Administrative Record at 18-21 (providing a thorough discussion of Shinkle's overall medical history and treatment).

[24] *Id.* at 22-23 (providing a thorough discussion of Shinkle's subjective allegations of disability).

[25] *Id.* at 18-23 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

## VII.  RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and enter judgment against Shinkle and in favor of the Commissioner.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 22nd day of December, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA